# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 28, 2004

## STATE OF TENNESSEE v. JONATHAN B. CUTSHAW

**Appeal from the Criminal Court for Cocke County**
**No. 8873     Ben W. Hooper, II, Judge**

---

**No. E2003-02502-CCA-R3-CD - Filed October 8, 2004**

---

The defendant, Jonathan B. Cutshaw, pleaded guilty in the Cocke County Criminal Court to one count of burglary, in violation of Tennessee Code Annotated section 39-14-402, and to one count of vandalism, in violation of Tennessee Code Annotated section 39-14-408. Pursuant to his plea agreement with the state, he accepted joint and several liability for restitution, along with others involved in the vandalism, and he received an effective sentence of three years, with the manner of service of the sentences to be determined by the trial court. After a sentencing hearing, the trial court ordered the defendant to serve his sentences in confinement and to pay restitution. It is from this order that the defendant appeals. We modify the judgment of the trial court as to manner of service of the sentences and remand for further findings regarding the appropriate amount of restitution.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Modified and Remanded.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Susanna Laws Thomas, Newport, Tennessee, for the Appellant, Jonathan B. Cutshaw.

Paul G. Summers, Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

We glean the facts underlying the defendant's convictions from his sentencing hearing conducted on September 16, 2003.[1]

---

[1] We do not have a complete transcript of the plea-submission hearing in the record before us. The transcript reflects the court's questioning and acceptance of the defendant's plea, but the factual basis for the plea, which customarily precedes the actual plea, is not included. Nevertheless, the sentencing hearing transcript affords us a

(continued...)

Donald W. Ayers is the District Security Manager for K-VAT Foods, Food City, and he testified that he was dispatched to Newport on September 27, 2002, to investigate vandalism at one of the stores located on West Broadway. The store was not open for public use at the time, and it was locked. Inside the building were numerous used, upright freezers. When Ayers went inside the store, he discovered extensive damage, including glass having been broken out of all the freezers, many of which had been upended, and broken windows and mirrors in the bathroom. Ayers had calculated the amount of damage to be $31,825, and since K-VAT was self-insured, the company bore the full cost. The damage estimate for the freezers was based on repairing the existing units, not replacement cost. Ayers did not know the original purchase price for the freezers or their fair market value prior to the vandalism. Ayers believed that the freezers were ultimately removed as salvage, instead of being repaired.

The defendant was sworn and testified that other than a truancy charge when he was a juvenile, he had no criminal history. At the time the presentence report was prepared, he was twenty years old and was employed performing landscaping services. Since that time, he had obtained employment at the local Holiday Inn in Newport, working in food service. The defendant was residing with his best friend and the friend's mother.

Regarding his involvement in the offense, the defendant testified that a co-defendant, Richard McMahan, picked him and others up and drove to the building. The defendant admitted going inside the building, and he testified that "everybody that was there broke at least one thing[,] and then we left." The defendant denied any drinking was involved, at least in his presence.

The defendant testified that since his arrest, he had been associating with "a different crowd" and had been working hard and staying at home. The defendant acknowledged responsibility for what had happened and said that he was willing to make payments toward restitution. If admitted to probation, the defendant said that he would submit to any conditions concerning employment, drug testing, and payments.

The state explored on cross-examination the topic of the defendant's sobriety. As reflected in the presentence report, the defendant began drinking when he was sixteen years old but claimed to have stopped when he turned nineteen years old. He had a history of smoking marijuana but said that he had "not done that in a while" and that he quit because there was "no point in it."

In his statement to the police, the defendant said that he stayed inside the building approximately 30 minutes. According to the defendant, during that time "[e]veryone that was there broke a couple of things[,] and then we left." Some of the time inside the building, the defendant and others walked around looking at what was there. The defendant said that he went inside the

---

[1](...continued)

meaningful view of the underlying facts, thus enabling our *de novo* review of the sentence. *See* Tenn. Code Ann. § 40-35-401(d) (2003).

building with three other people. The defendant explained that he entered the building only once but that he had heard that others had perhaps returned at another time.

During the sentencing hearing, a factual dispute arose between the defendant and McMahan, who also was present in the courtroom. McMahan insisted that eight people were present: Joe Parton, the defendant, and McMahan in one vehicle, and Randy Steven, Jason Gunter, Andrew Kirk, and two unknown males in a second vehicle. The defendant told the court that he and Kirk rode in the backseat of McMahan's vehicle and that McMahan and Parton were in the front. The defendant said that he did not know what happened after the four of them left the building and went home. A law enforcement incident report, which was filed with the court, indicated that the damage to the vacant building occurred sometime between the 6th and 27th of September, and according to a police statement given by one of the vandals, all of the damage did not occur at one time, because the building was entered on more than one occasion.

The court's sentencing remarks were brief. It ruled,

The Court does sentence [the defendant] to three years on the vandalism; two years on the burglary. And at this, at least up to this point the figure that's been used thus far of $31,825.00 is ordered to be paid jointly and severally and he cannot go to Food City.

The Court finds that this . . . You know, there's a certain amount of compassion that you can have for a young fellow that just really, really gets into some deep trouble but then, on the other hand, this act cannot be overlooked. It's deterrence is something to be considered.

He is awfully close to being entitled to probation but the Court just cannot do that, Mr. Cutshaw.

I would assume that this sentence could be built in the Cocke County Jail. You've already got some time on it and, of course, you can apply for work release which may let you continue, at least, to earn something while you're building this sentence.

Aggrieved by the manner of service of his sentence and the restitution ordered, the defendant has appealed.

The law is well settled that before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee

Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b) (2003); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. *See State v. Samuels*, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a *de novo* review of the sentence with a presumption that the determinations made by the trial court are correct. *See* Tenn. Code Ann. § 40-35-401(d) (2003). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. *See State v. Pike*, 978 S.W.2d 904 (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. *See* Tenn. Code Ann. § 40-35-401 (2003) Sentencing Commission Cmts.; *Arnett*, 49 S.W.3d at 257.

In our estimation, the trial court's brief remarks in imposing sentence in this case do not constitute the type of affirmative showing required to invoke our *de novo* review with a presumption of correctness. Furthermore, the court's passing reference to deterrence does not satisfy the dictates of *State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000), "that the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated." *Id*. at 9. Accordingly, we review this matter *de novo* without a presumption of correctness.

A defendant, such as the defendant in this case, who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (2003). *See also State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

-4-

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2003); *see also Hooper*, 29 S.W.3d at 5. Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. *See* Tenn. Code Ann. § 40-35-103(2), (4) (2003). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. *See id*. § 40-35-103(5) (2003).

In addition, because the defendant received a sentence of eight years of less, he was eligible for probation, and the trial court was required to consider probation as a sentencing option. *See id*. § 40-35-303(a), (b) (2003). "The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof." *State v. Kenneth Jordan*, No. M2002-01010-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Nashville, May 8, 2003) (citing *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996)). The burden is upon the defendant to show he is a suitable candidate for probation. Tenn. Code Ann. § 40-35-303(b) (2003); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *Boggs*, 932 S.W.2d at 477. To sustain this burden, the defendant must show that the sentence imposed was improper and that full probation would be in the best interest of the defendant and the public. *E.g.*, *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

We are not troubled by the trial court's rejection of full probation for the defendant inasmuch as he did not shoulder his affirmative burden of demonstrating why such sentence would "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). We are, nevertheless, concerned that no obvious consideration was given to the defendant's statutory presumption of favorable candidacy for alternative sentencing in the absence of evidence to the contrary. The state, in our opinion, did not offset the presumption with any of the factual premises listed in Code section 40-35-103(1), such as, the need to protect society from an offender with a long history of criminal conduct or the ineffectiveness of prior non-confinement measures. *See* Tenn. Code Ann. § 40-35-103(1)(A)(C)

(2003).  Accordingly, we modify the defendant's sentence to a term of split confinement, with six months to be served in the local jail or workhouse and the balance to be served on probation.[2]

As for restitution, the record is clear that the defendant agreed to payment of restitution as part of his plea agreement with the state.  Moreover, in our view, restitution is entirely appropriate in this case.  Even so, the amount of restitution a defendant is ordered to pay must be based upon the victim's pecuniary loss and the financial condition and obligations of the defendant. *See State v. Bottoms*, 87 S.W.3d 95, 108 (Tenn. Crim. App. 2001).  No testimony or evidence appears of record establishing the fair market value of the property vandalized or its replacement cost.  The only evidence was Ayers' damage calculation of $31,825 based on repairing the existing units, not replacement cost.  Ayers did not know the original purchase price for the freezers or their fair market value prior to the vandalism, and he understood that the freezers were ultimately removed as salvage in return for the cleanup of the building, instead of being repaired.

From the transcript of the sentencing hearing, the trial court expressed concerns about calculating the victim's losses.  Indeed, the court directed Ayers, "Check with those folks and see if they can come up with . . . I need to know the value of these freezers, where they came from, what happened to them."  The court added, "Somebody needs to tell that and . . . It's kind of shooting from the hip, just to take that figure and I'm not satisfied."  The record is silent whether the requested information was forthcoming, and like the trial court, this court is not satisfied with the loss calculation as it presently stands.  Under these circumstances, we believe a remand is required for the trial court to inquire further into the calculation of restitution in this cause.

Accordingly, this cause is remanded for the imposition of the altered sentence and the recalculation of restitution.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[2] Our disposition obviates the arguable need to consider the impact of *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531 (2004), on Tennessee's scheme of presuming favorable candidacy for alternative sentencing. *See* Tenn. Code Ann. § 40-35-102(6) (2003).